# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### G. T. DIGGS v. COMMONWEALTH OF VIRGINIA.

January 17, 1935.

Present, All the Justices.

The opinion states the case.

*W. L. Devany, Jr.,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

G. T. Diggs was indicted, tried and found guilty of breaking and entering a smokehouse and stealing therefrom several hundred pounds of meat, consisting of hams, shoulders, sides and two cans of lard.

The accused complains of the action of the court in refusing to set aside the verdict on the ground that there was not sufficient evidence to support it. The evidence for the Commonwealth, if believed, establishes the following facts:

A smokehouse owned by J. M. Byrd was broken open and entered in the night time on or about the 9th or 10th of

May, 1933, and the meat and lard were stolen therefrom. The accused operated a stall in the Arcade market at Norfolk, Virginia, in which, on May 18th, a quantity of meat was found which was positively identified by Byrd as a part of the meat stolen from him. While search of the accused's stall was taking place, one J. L. Robinson, who had a stall in the same market, informed the officer making the search that he had the lard in his place, but did not state from whom he had purchased it or how it came into his possession. Byrd claimed the lard, which was turned over to him. Robinson was not produced at the trial and no action was taken against him.

The accused employed two negroes, George Williams and Duchey Rountree, to go with him after "some stuff." He took them in his car from Norfolk to Byrd's farm in Nansemond county, arriving there about one-thirty, a. m. Duchey Rountree broke into the smokehouse, then he and George Williams carried the meat and lard from the smokehouse to the car. While they were doing this, the accused walked up and down the road near by, as George Williams testified, for their protection. The accused then drove his car back to Norfolk and he and his two companions put the stolen property in his stall in the Arcade market. From this summary, it is apparent that the court committed no error in refusing to set aside the verdict on the ground stated.

The second assignment of error is based on the action of the trial court in permitting E. B. Rawls, sheriff of Nansemond county, to testify that George Williams, after he was arrested and turned over to the Nansemond authorities by the police of Franklin, carried the officers to Byrd's home, pointed out to them the house from which the meat and lard were taken, showed them the course over which they went from the smokehouse to where the automobile was parked, and the foot prints made by him and another man on their trips from the smokehouse to the car.

The accused states in his petition that the testimony was hearsay and was such as Williams himself might have given.

Williams testified that he did not know whose place it was to which the accused took him on the night the meat was stolen, but that after he was arrested he took Sheriff Rawls and several other officers to the same place. The evidence of the sheriff was admissible for the purpose of identifying the smokehouse from which the meat was taken. The sheriff, in his testimony, did not state anything that Williams had said to connect the accused with the crime. In fact, he did not mention the name of the accused. We find no error in the admission of this evidence.

The third assignment of error is to the action of the court in permitting George Williams to testify that while he was confined in the jail at Suffolk one Joe Fentress brought him clothing, fruit and money, which Fentress stated to the witness had been sent him by the accused.

The accused, in his petition, states that there was no evidence to connect him with these donations which Williams claims were for the purpose of getting him to assume all liability for the breaking, entering and theft of the meat. The petition fails to point out the specific ruling of the trial court to which objection was made, or just how this evidence got into the record. We have repeatedly stated that in order for a litigant to preserve his exception to the ruling of the trial court, he must make specific objection thereto, and when an assignment of error is based on such an exception, appropriate reference to the record should be made in the petition so that this court may be relieved of the necessity of examining the entire record to see the exact ruling in question. This was not done in this case.

If we accept the statement in the petition, it appears that the trial court committed a glaring error in admitting this testimony. On examination of the record, we find numerous colloquies between counsel and the court, and each time the court was asked to make a specific ruling on the admission of this testimony it held that it was improper. The following is a fair sample:

The witness (Williams) was asked: "What did he (Fentress) say he wanted?

"A. He was telling me about what Mr. Diggs said.

"Mr. Devany: Object to that.

"Mr. Godwin: Don't tell what he said.

"Mr. Devany: He has testified to what Mr. Diggs is supposed to have told this man.

"The Court: Don't tell what somebody told you, Mr. Diggs not being there.

"Mr. Devany: I am talking about the entire evidence as to somebody bringing him something and making the insinuation or drawing the inference it was sent by Mr. Diggs.

"The Court: I don't think there is any evidence to prove that fact.

"Mr. Devany: Unless he can couple it up it is not admissible.

"The Court: I will direct it struck out unless he can connect it up.

"Mr. Devany: If Mr. Godwin can assure us he can couple it up with Mr. Diggs it is a different proposition.

By Mr. Godwin:

"Q. What did he want you to do?

"A. He wanted me to take the fall.

"Mr. Devany: Your Honor, I submit that is improper.

"Mr. Godwin: Your Honor, I can't show any more than the circumstances tending to show what has happened to this boy since he has been in jail.

"The Court: You can show the circumstances, of course, but what somebody else told him is not legal testimony against the accused.

"Mr. Devany: It is irrelevant.

"The Court: What somebody else told this boy is not legal evidence against this accused.

"Mr. Godwin: I am not asking what he told him. I just want to know the facts, if someone has tried to get him to take the fall for this man.

"Mr. Devany: Unless he can show Mr. Diggs did it or was instrumental in doing so, we submit it is not admissible.

"The Court: Well, let's move along then.

"Mr. Devany: What is your ruling on that?

"The Court: My ruling, as I have already said, is that unless he can show that Diggs authorized it or this man was acting for him, it is not legal testimony."

▉ Joe Fentress, the man whom Williams had said brought him the different articles while he was in jail, was put on the stand by the accused. He admitted that he had taken the different articles to Williams and for that purpose had on several occasions visited the witness in the Suffolk jail. On cross-examination he was asked about different statements it was claimed he had made to George Williams while in jail, many of which he denied. Williams was re-called in rebuttal and all the evidence to which the accused had theretofore objected was admitted without objection and, at his request, seems to have been limited by the court to impeaching the testimony of Joe Fentress. While some of the testimony was of doubtful relevancy, each time the trial court was specifically requested to make a ruling it held the testimony inadmissible.

The fourth assignment of error is based upon the action of the court in refusing to set aside the verdict on the ground of after-discovered evidence.

The indictment charged the crime to have been committed on the —— day of May, 1933. Byrd, when first called to the stand, was not positive of the date on which the smoke-house was entered, but stated it was either the 9th or 10th of May. George Williams made no attempt to fix the date, but stated that in delivering the meat at the market one ham was dropped, which the police found that night and was later claimed by Diggs. Neither A. S. Floyd, the property clerk, nor the police officer, Penman, who was on duty at the Arcade market, was called as a witness, but after ver-dict the accused filed affidavits of these parties in which it was stated that on the morning of May 9, 1933, two hams were found near the entrance to the market, which were held by the property clerk until May 10th, when they were delivered to the accused, who claimed them as his property. The policeman further stated that no meat was delivered

at the market between midnight of May 9th and four a. m. of May 10th.

The statements in these affidavits in part corroborate the testimony of the Commonwealth's witness, George Williams, but are contradictory of the date of the crime as fixed by Byrd, who, when recalled in rebuttal, stated that the smokehouse was entered and the meat stolen on either May 9th or 10th.

In view of the positive testimony of Williams and the strong corroborating circumstances, it is very doubtful whether this evidence would have produced a different verdict. Nor does it affirmatively appear that the accused made any effort to obtain the evidence prior to the verdict. He stated that he had operated this stall in the Arcade market a number of years. It is reasonable to infer that he knew the different police officers who patrolled that section of Norfolk. He at least knew that lost or stolen property found in the city of Norfolk was placed in the custody of the property clerk, and that he had obtained from this clerk one or more of the hams. Yet he made no effort to interview either of these parties or to obtain their evidence in his behalf until after verdict.

Under all the circumstances, we do not think that the trial court erred in refusing to grant a new trial on the ground of after-discovered evidence.

On a careful examination of the whole record we find no reversible error, hence the judgment of the trial court is affirmed.

*Affirmed.*